IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EFRAIN RODRIGUEZ, | )<br>) |
| Movant, | )  Case No. 3:11-1076<br>)  Judge Haynes |
| v. | )<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Respondent. | ) |

## MEMORANDUM

Movant, Efrain Rodriguez, filed this pro se action under 28 U.S.C. § 2255 seeking to set aside his convictions for conspiracy with the intent to distribute more than 500 grams of methamphetamine for which Movant received a sentence of 89 months. In his original petition, Movant asserted several claims of ineffective assistance of counsel. (Docket Entry No. 1). After a review of the pro se petition, the Court appointed the Federal Public Defender who filed an amended motion[1] (Docket Entry No. 14) with the following claims of ineffective assistance of counsel: (1) that trial counsel was ineffective in advising Movant on his plea agreement; (2) that trial counsel failed to object to presentence investigation report and the Governments's rebuttal statements at sentencing; (3) that trial counsel failed to translate the plea agreement and had difficulty communicating with Movant, whose language is Spanish; (4) that counsel failed to

---

[1]Rule 15 of the Federal Rules of Civil Procedure applies to a habeas proceeding. Mayle v. Felix, 545 U.S. 644, 649 (2005); Rule 6(a), Rules Governing Section 2254 Cases. Under Fed. R. Civ. P. 15 (a), the filing of an amended complaint supersedes the prior complaint. Clark v. Tarrant County, Texas, 798 F.2d 736, 740-41 (5th Cir. 1986). Thus, the Court deems the amended petition to supersede the pro se petition and the claims therein. Unless adopted and supported by legal memorandum, the Court deems the claims in the pro se and first amended petition to be waived.

1

effectively explain the Methamphetamine Sentencing Guideline; and (5) that trial counsel failed to pursue an appeal.

A. **Procedural History**

On September 2, 2009, Movant was indicted for conspiring to possess with intent to distribute and distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. United States v. Rodriguez, Case No. 3:09-cr-00202 (M.D. Tenn. 2009). Shortly thereafter, Movant agreed to cooperate and later pled guilty and executed a plea agreement with the United States. In his plea agreement, Movant agreed to the following facts:

> 8. Defendant will plead guilty because he is in fact guilty of the charges contained in the indictment. In pleading guilty, defendant admits the following facts and agrees that those facts establish his guilt beyond a reasonable doubt:
>
> a. Beginning not later than on or about July 30, 2009, the exact date being unknown, in the Middle District of Tennessee and elsewhere, the defendant and his co-defendant, Edgar Morales (hereinafter "Morales"), did combine, conspire, confederate, and agree with each other and others known and unknown, to unlawfully, knowingly, and intentionally possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.
>
> b. Prior to July 30, 2009, officers of the Metropolitan Nashville Police Department ("MNPD") had worked with a confidential source (hereinafter "CS") to make controlled purchases of controlled substances from the defendant. The CS informed the MNPD officers that the defendant agreed to sell a kilogram of methamphetamine to the CS on July 30 2009, for $43,000.
>
> c. On July 30, 2009, MNPD officers conducted surveillance on the defendant as he met with the CS in Hendersonville, Tennessee, and as they traveled in the same vehicle to Nashville, Tennessee. The CS and the defendant drove to 570 McMurray Drive, the Whispering Hills Apartments, in Nashville, in the Middle District of Tennessee.
>
> d. The MNPD officers observed the defendant walk into Apartment

E-12. At that time, he was empty-handed. Several moments later, officers observed the defendant leave Apartment E-12 carrying a white bag. The defendant was accompanied by Morales. Both the defendant and Morles got into the vehicle with the CS.

  e.  The three individuals traveled to the Wal-mart located at Harding Pike and Nolensville Road. At that time, a MNPD officer pulled the vehicle over. Officers found inside the vehicle the white bag that the defendant was observed carrying out of Apartment E-12. Inside that bag was a substance that field-tested positive for methamphetamine.

  f.  The substance found inside the white bag was tested by a laboratory of the Drug Enforcement Administration. The results of that test indicated that the substance contained methamphetamine, that it weighed 999 grams, and that the purity level was approximately 88.4%.

  g.  Defendant acknowledges that for the purpose of determining the applicable advisory sentencing range under the United States Sentencing Guidelines (hereinafter "U.S.S.G."), the following conduct, to which he stipulates, constitutes relevant conduct under U.S.S.G. §1B1.3: the total amount of methamphetamine for which he is responsible is at least 500 grams but less than 1.5 kilograms.

  This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

United States v. Rodriguez, Case No. 3:09-cr-00202, Docket Entry No. 41 at 4-5.

At his guilty plea hearing, Nathan Moore appeared "on behalf of Anna Escobar." Id., Docket Entry No. 99 at 3.[2] The guilty plea hearing included the following colloquy between Movant and the Court:

Q. All right. You are represented in the case by Ms. Escobar, Anna and Mr. Moore?

---

[2]Escobar's father had a heart attack and was undergoing surgery on the day of the plea hearing (Rodriguez v. Untied States of America, No. 3:11-cv-1076, Docket Entry No. 18-1, Escobar Affidavit at ¶ 10). Nathan Moore, is an experienced attorney who had appeared in federal court. Id. The Movant met Moore prior to entering his plea and agreed to have Moore sit in for Escobar due to her family emergency. Id.

3

A. Yes.

Q. Are you satisfied how they represented you?

A. Yes.

Q. Did they go over the charges with you?

A. Yes.

Q. Did they tell you what the maximum penalties are?

A. Yes.

Q. Did they tell you what they may be in position to prove if this case went to trial?

A. Yes.

Q. Did they tell you what their investigation into these charges [revealed]?

A. Uh-huh, yes.

Q. Did you tell them everything you know about these charges?

A. Yes.

Q. So these decisions you made to waive your rights and to plead guilty - - did you have the full benefit of your lawyers' advice in doing so?

A. I did it myself.

Q. Yes, but did you have the full benefit of your lawyers' advice in making your decision to plead guilty and to waive your rights?

A. Yes.

Q. All right. Has anybody from the government pressured you in any way to get you to waive your rights and to plead guilty?

A. No.

United States v. Rodriguez, Case No. 3:09-cr-00202, Docket Entry No. 99 at 19-20.

During his plea hearing, Movant assured the Court that he had reviewed the plea agreement with his attorneys and an interpreter; that he understood the plea agreement and that did not have any questions nor need the Court to explain the plea agreement further. Id. at 18-19.

Although the parties contemplated Movant's eligibility for the "safety valve," Movant had a prior conviction for statutory rape. Thus, at sentencing, the Movant's presentence report found Movant's adjusted offense level to be 33[3] and a Criminal History Category of II, yielding a sentencing range of 151 to 188 months. United States v. Rodriguez, 3:09-cr-00202, Docket Entry No. 96. The statutory mandatory minimum penalty was 120 months under Title 21, U.S.C. Section 841(b)(1)(A).

Based on the Movant's substantial assistance, the United States moved for a downward departure to level 28 that resulted in a sentencing range of 87 to 108 months. The United States proposed a sentence of 90 months, an approximately 40 percent departure from the guideline range. Government's counsel explained that, after his arrest, Movant agreed to cooperate and met with the United States representatives from the Drug Enforcement Agency ("DEA") on several occasions to disclose his criminal activities, as well as provide information about his co-defendant and his source for the methamphetamine. The DEA investigated Movant's cited source for the methamphetamine, but charges were never brought against the source. Movant's agreement to cooperate and testify at

---

[3]Although defendant was charged with possessing 500 grams or more of a "mixture" of methamphetamine, the DEA lab tested the substance seized from the defendant at the time of his arrest. The result of that test was that the substance weighed 999 grams and was 88.4 percent pure methamphetamine. Pursuant to U.S.S.G. Section 2D1.1, Note B (which is included in the Guidelines manual prior to the Application Notes to Section 2D1.1), whatever amount - be it the amount of "mixture" or the "actual" amount of the drug - which results in a higher offense level, that is the amount of drugs to be used to calculate the base offense level.

trial became known to his co-defendant Morales, who shortly thereafter pled guilty. In the United States's view, Movant's cooperation was a significant reason for Morales's guilty plea. The United States also informed the Court that Movant had withheld the information regarding his prior conviction for statutory rape and his statements about the rape were inconsistent with the police report as to the length of Movant's involvement with the minor female victim.

The Court sentenced Movant to 89 months with five years of supervised release. United States v. Rodriguez, No. 3:09-cr-00202, Docket Entry Nos. 90 and 91, Judgment and Sealed Statement of Reason. After time for the notice of appeal had expired, Ana Escobar, Movant's trial counsel, moved to file a late notice of appeal, citing Movant's letters requesting an appeal. United States v. Rodriguez, No. 3:09-cr-00202, Docket Entry No. 94. The Court granted that motion, but the Movant later withdrew that appeal. Rodriguez v. United States, No. 3:11-cv-1076, Docket Entry No. 18-1, Escobar Affidavit at ¶¶ 17-18.

As to Movant's claims about his trial counsel, Escobar's affidavit refutes Movant's assertion that she had difficulty communicating with the Movant in Spanish. Escobar, who was raised speaking Spanish, studied Spanish at Vanderbilt University. Escobar had the initial draft of the plea agreement translated into Spanish and, in light of his prior conviction, Escobar discussed the safety valve issue in Spanish with Movant prior to his plea hearing. Id. at ¶¶ 7-10. At the plea hearing, Movant told this Court that he had reviewed the plea agreement with his attorney and with an interpreter. United States v. Rodriguez, 3:09-cr-00202, Docket Entry No. 99, Plea Hearing Transcript at 18-19.

As to Escobar's alleged failure to challenge the "actual" amount of methamphetamine utilized to calculate Movant's base offense level, Movant asserts that the actual amount is a

6

"variation" from the amount in the indictment and that forensic evidence would reveal a lower percentage of actual methamphetamine seized from Movant. Movant asserts such proof would have lowered his guideline range. The indictment charged Movant for conspiracy to possess and distribute 500 grams or more of a "mixture" of methamphetamine. After the DEA laboratory tested the substance and the parties received the laboratory report, the parties knew the "actual" methamphetamine content and purity level. The laboratory results were included in Movant's plea agreement. The parties' plea agreement states that he possessed 999 grams of a mixture of methamphetamine, but was responsible for 500 grams to 1.5 kilograms of actual methamphetamine. Thus, the Court finds that there is not any "variation" from the indictment, and the guidelines were accurately determined. Movant lacks any proof of an actual variance or inappropriate rebuttal statement by the Government counsel at sentencing.

Movant next alleges Escobar failed to give "adequate professional advice" to Movant as to the terms and consequences of entering the plea agreement, "and as to the wisdom of accepting the plea agreement." Rodriguez v. United States, 3:11-cv-1076, Docket Entry No. 14 at 4-5. Movant also alleges "Escobar failed to ensure that Rodriguez was not influenced by promises or threats not contained in the plea agreement" and that but for those failures, Movant would not have entered the plea agreement. Id. at 5. Movant's statements at the plea colloquy are to the contrary and Escobar's affidavit corroborate the Movant's plea hearing statements.

As to his counsel's failure to file an appeal, Escobar did file a notice of appeal that the Movant withdrew. The Movant's plea agreement provided that Movant would not appeal his sentence if his sentence was below the recommended guidelines range.

For his ineffective assistance of counsel, Petitioner must prove that under the totality of the

circumstances, his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 695 (1984). As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. 687. As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691.

In any event, Strickland directs that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 689, 691. As the Supreme Court noted, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id. at 691. A court must examine not only the individual errors of counsel, but must also view the effect of the errors cumulatively. See Draper v. Adams, 215 F.3d 1325, 2000 WL 712376, *3 (6th Cir. May 23, 2000).

To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

8

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Williams v. Taylor, 529 U.S. 362, 390-91 (2000). In a word, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Strickland, 466 U.S. at 694.

Where the ineffective assistance of counsel claim involves a guilty plea, Petitioner must present proof that, but for his counsel's acts or omissions and under all of the circumstances, he would not have pled guilty and would have insisted upon a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). This assessment includes whether any "affirmative defense likely would have succeeded at trial," and whether any cited evidence "likely would have changed the outcome of the trial." Id.; Maples v. Stegall, 340 F.3d 433, 440 (6th Cir. 2003).

A plea of guilty is valid if entered voluntarily, knowingly and intelligently, and its validity is determined under the totality of the circumstances. Brady v. United States, 397 U.S. 742, 748-49 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969). The Constitution requires that a defendant be informed of the direct consequences of his plea, Brady, 397 U.S. at 755, including the maximum possible sentence. Riggins v. McMackin, 935 F.2d 790, 796 (6th Cir. 1991).

Given Movant's decision to cooperate early, the undisputed facts of Movant's involvement and his significantly reduced sentence, the Court concludes that Movant's counsel provided reasonable assistance and Movant has not shown prejudice attributable to his counsel. The Court also concludes, based upon a review of the record involving the plea colloquy that Movant's guilty plea was knowingly and voluntarily entered. Thus, the Court concludes that this action should be dismissed with prejudice.

As to Petitioner's reliance on <u>Olden v. United States</u>, 224 F.3d 561, 568 (6th Cir. 2000), where a co-defendant's counsel served as a defendant's "stand-in" counsel for one of the trial days where the defendant's counsel had to attend a funeral, the Sixth Circuit observed:

> Given the record before us, we cannot determine whether Olden knowingly and intelligently accepted substitute counsel and thereby waived his right to have his own counsel present. The district court did not ascertain whether Olden had any knowledge as to his Sixth Amendment rights, his right to have his own counsel, his right to reject the substitute counsel of his co-defendants, or his right to request a continuance until his own counsel could be present. Nor did the district court engage in the kind of colloquy envisioned by Federal Rule of Criminal Procedure 44(c) when two criminal co-defendants are jointly represented by the same counsel. See Fed.R.Crim.P. 44(c). We hold that just as a district court is required to apprise a defendant seeking to represent himself of the nature of his Sixth Amendment rights and the consequences that attend waiver of those rights, <u>see</u> <u>United States v. Hernandez</u>, 203 F.3d 614, 625–26 (9th Cir.2000), a similar colloquy is required when, at any point in a trial, a criminal defendant agrees to accept the substitute counsel of a co-defendant. Such an explanation is contemplated by Rule 44(c), and mandated by the Constitution's requirement that we recognize a Sixth Amendment waiver only when a criminal defendant knowingly, intelligently, and voluntarily agrees to surrender his right to counsel.

<u>Id</u>. at 569.

The Court deems <u>Olden</u> factually distinguishable in that, according to Escobar's affidavit, Movant accepted Moore's substitution for her at the guilty plea hearing. Movant was plainly aware and accepted Escobar's absence from the plea hearing. The Rule 11 colloquy establishes that Movant accepted Moore as his counsel and that Movant understood his right to effective assistance in connection with his guilty plea. Here, Moore was not representing any defendant with a conflict and served only Movant's interests. The terms of the plea agreement had been negotiated over time and reduced to writing in English and Spanish.

For these collective reasons, the Court concludes that this action should be dismissed.

An appropriate Order is filed herewith.

**ENTERED** this the \_\_\_3rd\_\_\_ day of November, 2014.

                                          WILLIAM J. HAYNES, JR.
                                          United States District Judge